CHARLES M. DAMUS, ESQ.
Nevada Bar No. 000943
CHARLES M. DAMUS & ASSOCIATES
624 South Sixth Street
Las Vegas, Nevada 89101
Telephone (702) 382-5034
Facsimile (702) 384-9289
Email: c.damus@damuslaw.com
Attorneys for Movant INTOUCH CREDIT UNION

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re | Chapter 7 |
| RICHARD W. MILLER and<br>LOLITA S. MILLER, | CASE NO. S-10-15191-MKN |
| | MOTION FOR RELEASE OF<br>UNCLAIMED FUNDS |
| | Hearing Date: September 12, 2012<br>Hearing Time: 2:30 p.m. |
| Debtors, | Converted from Chapter 13 |

COMES NOW, INTOUCH CREDIT UNION, by and through its attorney, CHARLES M. DAMUS of DAMUS & ASSOCIATES, and brings its Motion for Release of Unclaimed Funds. This Motion seeks release of funds deposited in the Registry of the United States Bankruptcy Court. Pursuant to Rules 3010 and 3011, the Chapter 13 Trustee deposited the sum of $4,280.28 into the registry of the court on or about June 8, 2012. Said funds are subject to the claim of Claimant herein, INTOUCH CREDIT UNION, and were paid by the Debtors under their Chapter 13 Plan prior to conversion on the account of the secured debt due and owing INTOUCH CREDIT UNION secured by that certain 2007 Toyota Prius automobile, VIN JTDKB20U473265451, located in Clark County, Nevada. This Motion is based upon the pleadings and files herein, together with the following Points and Authorities, the Proof of

1

Claim annexed hereto as Exhibit 1, and the Notice of Unclaimed Funds filed by the Chapter 13 Trustee annexed hereto as Exhibit 2.

DATED this ___ day of August, 2012

CHARLES M. DAMUS & ASSOCIATES

_____
CHARLES M. DAMUS, Esq.
Nevada Bar No. 943
CHARLES M. DAMUS & ASSOCIATES
624 S. Sixth Street
Las Vegas, Nevada 89101-6920
Attorney for Movant
INTOUCH CREDIT UNION

**POINTS AND AUTHORITIES**

Debtors RICHARD W. MILLER and LOLITA S. MILLER filed a Chapter 13 bankruptcy on March 29, 2010. In said bankruptcy, Debtors listed Movant herein, INTOUCH CREDIT UNION, as a secured creditor, by virtue of a pre-petition vehicle loan made February 27, 2008 in the sum of $18,704.32. Debtors were delinquent on said loan pre-petition. The Note due INTOUCH CREDIT UNION is a purchase money note that has been past due since April 1, 2010. Co-Debtor RICHARD W. MILLER is the owner of record of the collateral.

Debtors filed a Motion to value the security in conjunction with their proposed Chapter 13 Plan. The Plan was confirmed, subject to said valuation, which bifurcated the claim of INTOUCH CREDIT UNION into secured and unsecured portions. Debtors made monthly plan payments and as a result, a total of $4,280.28 was set aside by the Chapter 13 Trustee for INTOUCH CREDIT UNION.

No distributions were made by the Chapter 13 Trustee to INTOUCH CREDIT UNION. As a result, INTOUCH CREDIT UNION filed a Motion for Relief from Stay, believing that Debtors had failed to make payments. Now the bankruptcy has been converted to a Chapter 7 and said $4,280.28 has been paid to the court registry by the Chapter 13 Trustee.

Attached hereto as Exhibit 1 is a Proof of Claim filed by INTOUCH CREDIT UNION in the sum of $10,241.04. Said Proof of Claim includes a copy of the California Certificate of Title, as well as the original loan documents, credit application and valuation information. Clearly, the funds in the registry should be released and paid over to INTOUCH CREDIT UNION.

11 U.S.C. § 347(a) requires a Trustee to pay into the bankruptcy clerk any distribution to a creditor that the creditor does not timely claim. In this case, it was believed by the undersigned counsel who filed the Motion for Relief from Stay, that INTOUCH had timely filed a Proof of Claim. Apparently it did not, but has since done so (*see* Exhibit 1). As a result, the unclaimed funds paid into the court registry are to be disposed of under Chapter 129 of Title 28 of the United States Code.

Section 2041 of Chapter 129 governs deposit of monies of pending and adjudicated cases and Section 2042 governs withdrawal of funds. Funds can be released upon showing of entitlement before the lapse of five years pursuant to Section 2042. Unclaimed funds that are deposited into the court registry pursuant to § 347 and § 2041 "are held in Trust for those persons found rightfully entitled to them." *In re Parker*, 400 B.R. 55, 59 (Bankr. E.D. Pa. 2009) (citing *In re Johnson*, 2008 WL 2338089, at 1 (Bankr. D.C. 2008)).

It is generally recognized that the "creditors whose distributions were returned remain the rightful owners of the unclaimed dividends." *In re Payroll Express Corporation,* 2008 WL

5396609, at 3 (Bankr. S.D.N.Y.). "Only the creditor to whom distribution was made is the rightful owner of the unclaimed funds." *In re Rush Hampton Industries, Inc.*, 379 B.R. 192, 193 (Bankr. M.D. Fla. 2007).

In this case, the Chapter 13 Trustee's Final Report and Account showed INTOUCH CREDIT UNION to have a scheduled secured claim of $10,242 and a scheduled unsecured claim of $5,500. It showed that the INTOUCH claim was allowed for $9,100 and that the principal paid on said claim $4,280.28. The Notice of Unclaimed Funds filed by the Chapter 13 Trustee shows said $4,280.28 collected on behalf of Claim No. 9 for INTOUCH CREDIT UNION. A copy of said notice is annexed hereto as Exhibit 2.

Accordingly, it is clear that INTOUCH CREDIT UNION is the sole rightful owner of the unclaimed funds herein, such that this motion should be granted.

Respectfully submitted,

CHARLES M. DAMUS & ASSOCIATES

CHARLES M. DAMUS, Esq.
Nevada Bar No. 943
CHARLES M. DAMUS & ASSOCIATES
624 S. Sixth Street
Las Vegas, Nevada 89101-6920
Telephone (702) 382-5034
Facsimile (702) 384-9289
Email: c.damus@damuslaw.com
Attorney for Movant
INTOUCH CREDIT UNION

4

EXHIBIT 1

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | District of Nevada | | RECEIVED AND FILED PROOF OF CLAIM |
|---|---|---|---|
| Name of Debtor: RICHARD W MILLER | | Case Number: 10-15191-mkn | MAY 29  11:03 AM '12 U.S. BANKRUPTCY COURT MARY A. SCHOTT, CLERK |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
InTouch Credit Union f/k/a First American Federal Credit Union

**COURT USE ONLY**

Name and address where notices should be sent:
InTouch Credit Union
PO Box 250169
Plano, TX 75025

Telephone number: (800) 337-3328   email: sumar.bland@itcu.org

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:   email:

**1. Amount of Claim as of Date Case Filed:**   $ 10,241.04

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** auto loan
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 0 1 - 2 | 3a. Debtor may have scheduled account as: 0102 (See instruction #3a) | 3b. Uniform Claim Identifier (optional): _____ (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☑ Motor Vehicle  ☐ Other
Describe: 2007 Toyota Prius VIN:JTDKB200473265451

Value of Property: $ 11,425.00

Annual Interest Rate 7.500% ☑ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ _____

Basis for perfection: Perfected Title

Amount of Secured Claim:   $ 10,241.04

Amount Unsecured:   $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/11) 2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor,  ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)  or their authorized agent.  (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Sumar N Bland
Title: Team Lead Member Solutions
Company: InTouch Credit Union
Address and telephone number (if different from notice address above):

*Sumar N. Bland*  05/24/2012
(Signature)  (Date)

Telephone number: (214) 291-1720  email: sumar.bland@itcu.org

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## RIDER TO PROOF OF CLAIM

** First American Federal Credit Union was acquired by EDS Credit Union through a merger in 2009. EDS Credit Union is now known as INTOUCH CREDIT UNION. The name officially changed on or about February 16, 2010. Documents to verify are available upon request.

## NOTICE OF TRANSFER AND RELEASE OF LIABILITY

*MAIL THIS FORM TO DMV*

TO PROPERLY RELEASE YOUR LIABILITY, PLEASE READ AND FOLLOW INSTRUCTIONS ON REVERSE SIDE
SECTIONS A-J MUST BE COMPLETED IN FULL    PRINT IN CAPITAL LETTERS – USE BLACK OR BLUE INK

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME    FIRST
B. NEW OWNER'S ADDRESS    APT NUMBER
C. ODOMETER READING (NO TENTHS)
D. CITY    STATE    ZIP CODE
E. DATE OF SALE OR LEASE RETURN    MO  DAY  YR
F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME    FIRST
G. SELLING PRICE (NO CENTS) WHOLE DOLLARS
H. SELLER'S OR LESSEE'S ADDRESS    APT NUMBER
I. SELLER'S OR LESSEE'S SIGNATURE  X
J. CITY    STATE    ZIP CODE

VEHICLE ID NUMBER: JTDKB20U473265451
YR MODEL: 2007    MAKE: TOYT
PLATE NUMBER: 5ZXG279

REG 138A (REV. 10/2004)

---

## STATE OF CALIFORNIA
### CERTIFICATE OF TITLE

17607073063

AUTOMOBILE

VEHICLE ID NUMBER: JTDKB20U473265451
YR MODEL: 2007    MAKE: TOYT    PLATE NUMBER: 5ZXG279
BODY TYPE MODEL: 4H
UNLADEN WEIGHT:    AX:    FUEL: Q    TRANSFER DATE:    FEES PAID: $15
REGISTRATION EXPIRATION DATE: 06/08/2008
YR 1ST SOLD: 2007    CLASS: FK    YR:    MO: NV    EQUIPMT/TRUST NUMBER:    ISSUE DATE: 08/10/07
ODOMETER DATE: 06/07/2007    ODOMETER READING: 12 MI
ACTUAL MILEAGE

REGISTERED OWNER(S):
MILLER RICHARD W
11800 WINEWOOD ST
VICTORVILLE CA 92392

I certify under penalty of perjury under the laws of the State of California, that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a.    DATE    X    SIGNATURE OF REGISTERED OWNER
1b.    DATE    X    SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [      ] (no tenths) miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

WARNING    ☐ Odometer reading is not the actual mileage.    ☐ Mileage exceeds the odometer mechanical limits.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE    TRANSFEROR/SELLER SIGNATURE    X
DATE    TRANSFEREE/BUYER SIGNATURE    X
PRINTED NAME OF AGENT SIGNING FOR A COMPANY    PRINTED NAME OF AGENT SIGNING FOR A COMPANY

**IMPORTANT READ CAREFULLY**
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S):
FIRST AMERCN FCU
1 FIRST AMERICAN WAY
SANTA ANA CA 92707

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

CA 105343784
029555    REG 17 3056 (REV. 10/05)

KEEP IN A SAFE PLACE - VOID IF ALTERED

| FIRST AMERICAN FEDERAL CREDIT UNION<br>1 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707 | RICHARD W. MILLER<br>5808 HANNAH BROOK ST<br>NORTH LAS VEGAS, NV 89081 | ACCOUNT #<br>Date 02-27-2008<br>Mat. Date 04-27-2012<br>Loan Amt. $ 18,704.32<br>Renewal Of _____<br>Mem.Assn # L-2 |
|---|---|---|
| **LENDER'S NAME AND ADDRESS**<br>"You" means the Lender, its successors and assigns. | **BORROWER'S NAME AND ADDRESS**<br>"I" includes each Borrower above, jointly and severally. | SSN# |

## 1. TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid when I have made all scheduled payments. | I have the right to receive at this time an itemization of the Amount Financed. |
|---|---|---|---|---|
| 7.479% | $ 3,088.73 | $ 18,704.32 | $ 21,793.05 | I want an itemization.<br>☐ Yes ☐ No |

| No. of Payments | Amt. of Payments | My Payments are Due as Shown Below | |
|---|---|---|---|
| 108 | $ 200.00 | BIWEEKLY BEGINNING 03-07-2008 | |
| 1 | $ 193.05 | ON 04-27-2012 | |
| | $ | | |
| | $ | | |
| | $ | | |
| | $ | | |

$ _____ Filing Fee
$ _____ Nonfiling Insurance

☐ This note has a demand feature.    ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.
☐ **Variable Rate** (Check one) { ☐ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
☐ The annual percentage rate may increase during the term of this transaction if _____

Any increase will take the form of _____.
If the rate increases by _____ % in _____, the _____
will increase to _____. The rate may not increase more often than once _____, and may not
increase more than _____ % each _____. The rate will not go above _____ %.

Security. I am giving a security interest in:    ☒ (brief description of other property) 2007 TOYOTA PRIUS VIN - JTDKB20U473265451
☐ the goods or property being purchased.
☐ collateral securing other loans with you may also secure this loan.
☐ my Accounts and other rights to the payment of money from you.
☒ **Late Charge.** I will be charged a late charge on the portion of any payment not made within 10 days after it is due equal to 10.000% OF THE PAYMENT AMOUNT.
☐ **Required Deposit.** The annual percentage rate does not take into account my required deposit.
**Prepayment.** If I pay off this note early, I will not have to pay a penalty.
    ☐ If I pay off this note early, I will not be entitled to a refund of part of the Additional Finance Charge.
☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.    "e" means an estimate.

## 2. ITEMIZATION OF AMOUNT FINANCED

*You may retain or receive a portion of this amount.

| AMOUNT GIVEN TO ME DIRECTLY | $ _____ |
|---|---|
| AMOUNT PAID ON MY (LOAN) ACCOUNT | $ _____ |
| | $ _____ |
| **AMOUNTS PAID TO OTHERS ON MY BEHALF:** | |
| to Insurance Companies | $ _____ |
| to Public Officials | $ _____ |
| LOAN PAYOFF L-1 | $ 17,704.32 |
| RICHARD MILLER | $ 1,000.00 |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| (less) PREPAID FINANCE CHARGE(S) | $ _____ |
| Amount Financed | $ 18,704.32 |
| (Add all items financed and subtract prepaid finance charges.) | |

VARIABLE/SIMPLE INTEREST NOTE, DISCLOSURE, AND SECURITY AGREEMENT
CONSUMER LOAN - NOT FOR OPEN-END CREDIT
Experi  © 1981, 1994, 2000 Bankers Systems, Inc., St. Cloud, MN Form CL-CU-CA 3/15/2001

(page 1 of 5)

## 3. PROMISE TO PAY AND PAYMENT TERMS

For value received, I promise to pay you the principal amount of $ 18,704.32 _____, plus interest, accruing on the unpaid balance at the rate of _____ 7.500 % per year from today's date until PAID IN FULL _____. Interest accrues on a ACTUAL/365 _____ basis. I also agree to pay any additional amounts according to the terms and conditions of this note.

The purpose of this loan is PURCHASE AUTO _____.

☐ **ADDITIONAL FINANCE CHARGE.** I agree to pay an additional, nonrefundable finance charge of $_____ that will be
   ☐ paid in cash. ☐ paid pro rata over the loan term. ☐ withheld from the proceeds. (If this charge is withheld from the proceeds, the amount is included in the principal sum.)

☐ **VARIABLE RATE.** The rate above may then change so as always to be _____ the following index rate:
_____
_____. The interest rate may not change more than _____ % each _____.
The annual interest rate in effect on this note will not at any time be more than _____ % or less than _____ %. The interest rate in effect on this note may change (as often as) _____ (assuming there is a change in the index rate) and an increase in the interest rate will cause an increase in ☐ the amount of each scheduled payment ☐ the amount due at maturity ☐ the number of payments.

☒ **LATE CHARGE.** I will be charged a late charge on the portion of any payment not made within 10 days after it is due equal to 10.000% OF THE PAYMENT AMOUNT.

☒ **RETURNED PAYMENT FEE.** To the extent not prohibited by law, I agree to pay you $ 20.00 for each check or share draft presented for payment which is dishonored because of insufficient funds.

**PAYMENT.** I will pay this note as follows:

108 BIWEEKLY PAYMENTS OF $200.00 BEGINNING 03-07-2008 AND 1 BALLOON PAYMENT OF $193.05 ON 04-27-2012.

## 4. SECURITY

You have certain rights that may affect my property. This loan ☒ is ☐ is not further secured.

(a) ☒ For value received, I assign and give to you a security interest in ☒ all my Account(s) or ☐ _____
    _____ Account(s). The amount of my Required Balance is $ 50.00 _____.

(b) ☐ This loan is secured by _____, dated _____.

(c) ☒ I give you a security interest in the Property described below:
    2007 TOYOTA PRIUS VIN - JTDKB20U473265451

## 5. CREDIT INSURANCE

Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional costs.

| Type | Premium | Term |
|---|---|---|
| ☐ Credit Life | | |
| ☐ Joint Credit Life | | |
| ☐ Credit Disability | | |
| ☐ | | |

☐ I do want the insurance checked above.  } Check one
☐ I do not want the insurance described above.

X _____ DOB _____
X _____ DOB _____
X _____ DOB _____
X _____ DOB _____
X _____ DOB _____
X _____ DOB _____

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ _____ for _____ of coverage.

**COMMISSIONS OR OTHER REMUNERATION.** I understand and agree that some payments to third parties as a part of the Loan Agreement may involve money retained by you or paid back to you as commissions or other remuneration.

(page 2 of 5)

Experi© 1981, 1994, 2000 Bankers Systems, Inc., St. Cloud, MN Form CL-CU-CA 3/15/2001

## 6. ADDITIONAL TERMS OF THE LOAN AGREEMENT

**DEFINITIONS.** As used in this Loan Agreement, ☒ means terms that apply to this Loan Agreement. "Loan Agreement" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes. The pronouns "I," "me", and "my" refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan Agreement. Property means any property, real, personal, or intangible, that secures my performance of the obligation of this Loan Agreement. "Account" means any and all share or deposit accounts held by you and includes, but is not limited to, accounts such as share, share draft, checking and term share accounts, including renewals and substitutions of the accounts. "Required Balance" means the amount of funds I must maintain in my Account(s) to secure this Loan Agreement.

**NAME AND LOCATION.** My name and address indicated on page 1 are my exact legal name and my principal residence. I will provide you with at least 30 days written notice prior to changing my name or principal residence.

**PAYMENTS.** Each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. No late charge will be assessed under the conditions described in the DISABILITY INSURANCE CLAIM section below. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record.

**PREPAYMENT.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**INTEREST.** Interest will accrue on the unpaid principal balance until paid in full. If "Variable Rate" is checked, I will pay interest at the rates in effect from time to time. Decreases in the interest rate for this Loan Agreement will have the opposite effect on payments that increases would have. The interest rate(s) and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law. You will figure a change in the interest rate by using the index rate in effect at the time the interest rate is to change. Changes in the index between scheduled changes in the interest rate will not affect the interest rate.

**INDEX.** If you and I have agreed that the interest rate on this Loan Agreement will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this note. You do not guaranty, by selecting any index, that the interest rate on this note will be the same rate you charge on any other loan or class of loans you make to me or any other borrower. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

**ACCRUAL METHOD.** The amount of interest that I will pay on this Loan Agreement will be calculated using the interest rate and accrual method stated. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**DISABILITY INSURANCE CLAIM.** As provided by California Civil Code Section 1812.400 et seq., if you have directly participated in, arranged, or received a commission or other compensation for the sale of credit disability insurance to me, you will not invoke any of your remedies against me because of my nonpayment of any sum due during a disability claim period. A disability claim period begins on the due date of the first payment for which I claim disability coverage arising from a then current disability and continues for three calendar months or until the insurer pays or rejects my claim, whichever occurs first.

**REAL ESTATE OR RESIDENCE SECURITY.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

**SECURITY INTEREST IN ACCOUNTS.** If an amount is entered on the Required Balance area, I must maintain a balance in my Account(s) equal to the lesser of the Required Balance or the amount remaining unpaid on the secured debt. No joint owner, beneficiary, surviving spouse or representative of my estate receives any rights in my Account(s) in the event of my death or incapacity until the secured debt is paid in full.

The security interest will not attach to any Account where my rights arise only in a representative capacity, or to any Individual Retirement Account or other tax-deferred retirement account. My Account(s) will not secure a debt created by a consumer credit transaction under a credit card plan. If any Account is jointly held, this security interest will attach to that portion of the account balance in the pledged Account(s) which I am authorized by law or agreement to pledge by my signature alone.

**SECURED OBLIGATIONS.** This security agreement secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt I have with you now or later. Property described in this security agreement will not secure other such debts if you fail to give any required notice of the right of rescission with respect to the Property. Also, this security agreement will not secure other debts if this security interest is in household goods and the other debt is a consumer loan. This security agreement will last until it is discharged in writing.

For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) Payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan; and (b) Payments on the Purchase Money Loan will be deemed to apply to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items were acquired. No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan the proceeds of which, in whole or in part, are used to acquire any property securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**PROPERTY.** The word "Property," as used here, includes all property that is listed in the security agreement. If a general description is used, the word Property includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits, payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from the Property, and all supporting obligations. "Proceeds" includes anything acquired on the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising out of the Property; and any collections and distributions on account of the Property.

**OWNERSHIP AND DUTIES TOWARD PROPERTY.** Unless a co-owner(s) of the Property signed a third party agreement, I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position. I will keep the Property in my possession (except if pledged and delivered to you). I will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure. I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

If an amount is entered on the Required Balance area, I must maintain a balance in my Account(s) equal to the lesser of the Required Balance or the amount remaining unpaid on the secured debt. No joint owner, beneficiary, surviving spouse or representative of my estate receives any rights in my Account(s) in the event of my death or incapacity until the secured debt is paid in full.

**INSURANCE.** I agree to buy insurance on the Property against the risks and for the amounts you require. I will name you as loss payee on any such policy. You may require added security on this Loan Agreement if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in California. The firm will be reasonably acceptable to you. My choice of insurance provider will not affect the credit decision or interest rate. I will keep the insurance until all debts secured by this Loan Agreement are paid.

**PERFECTION OF SECURITY INTEREST.** I authorize you to file a financing statement covering the Property. I agree to comply with and


(page 3 of 5)

facilitate your requests in connection with obtaining possession of or control over the Property until this security agreement is terminated. A copy of this security agreement may be used as a financing statement when allowed by law.

**DEFAULT.** Subject to any limitations in the REAL ESTATE OR RESIDENCE SECURITY section, I will be in default if any of the following occur:
(a) I fail to make a payment when due; or
(b) I fail to perform any condition or keep any promise or covenant of this or any agreement I have made with you.

**REMEDIES.** Subject to any limitations in the REAL ESTATE OR RESIDENCE SECURITY section, after I default, you may at your option do any one or more of the following:
(a) Make all or any part of the amount owing by the terms of this Loan Agreement due;
(b) Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement;
(c) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(d) Withdraw the amounts in my Account(s) and apply them toward the secured debt (even if the withdrawal causes a penalty or may subsequently cause a share draft to be dishonored);
(e) Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement;
(f) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this Loan Agreement and accrue interest on that amount at the interest rate(s) in effect from time to time, on this Loan Agreement until paid in full;
(g) Require me to gather the Property and any related records and make it available to you in a reasonable fashion;
(h) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease, or dispose of the Property as provided by law. (If the Property includes a manufactured home, you will begin the repossession by giving me notice and an opportunity to cure my default, if required by law.) You may apply what you receive from the sale of the Property to your expenses and then to the debt. If what you receive from the sale of the Property is less than what I owe you, you may take me to court to recover the difference (to the extent permitted by law); or
(i) Keep the Property to satisfy the debt.

I agree that when you must give notice to me of your intended sale or disposition of the Property, the notice is reasonable if it is sent to me at my last known address by first class mail 10 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.

Unless otherwise prohibited by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**ASSUMPTIONS.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Property. This right is subject to the restrictions imposed by federal law (12 CFR 591), as applicable.

**WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. In addition, I, to the extent permitted by law, consent to certain actions you may take, and generally waive all defenses that may be available based on these actions or based on the status of a party to this Loan Agreement. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other co-signer. You may release, substitute, or impair any Property securing this Loan Agreement. You, or any institution participating in this Loan Agreement, may invoke your right of set-off. You may enter into any sales, repurchases, or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases, or participations. I agree that any of us signing this Loan Agreement as Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying, or relating to this Loan Agreement. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all reasonable expenses of collection, enforcement, or protection of your rights and remedies under this Loan Agreement. Expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the rate provided in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted you, if any. This provision also shall apply if I file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**SET-OFF.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Loan Agreement against any right I have to receive money from you. My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Loan Agreement" means the total amount to which you are entitled to demand payment under the terms of this Loan Agreement at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Loan Agreement, your right of set-off will be limited to my proportionate interest in the obligation. In the absence of reasonable proof of net contributions, my proportionate interest equals the amount of such obligation divided equally by all parties having present rights to receive such money.

In addition, you may also have rights under a "statutory lien." A "statutory lien" means your right under state or federal law to establish a right in, or claim to, my shares and dividends to the extent of any outstanding financial obligations that I have with you. If you have a statutory lien, you may without further notice, impress and enforce the statutory lien on my shares and dividends to the extent of any sums due and payable under the terms of this Loan Agreement that I fail to satisfy.

Your set-off and statutory lien rights do not apply to an account or other obligation where my rights arise only in a representative capacity. They also do not apply to any Individual Retirement Account or other tax-deferred retirement account.

Section 864 of the California Financial Code may limit your right to set-off against any demand deposit accounts I have deposited with you. In certain circumstances, I may be entitled to a notice of set-off. State law may further limit your right of set-off.

You will not be liable for the dishonor of any check or share draft when the dishonor occurs because you set-off against any of my accounts, or exercised your statutory lien rights. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off or statutory lien rights.

**WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or to which I am a party.

**OTHER SECURITY.** Any present or future agreement securing any other debt I owe you also will secure the payment of this Loan Agreement. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

**GENERAL PROVISIONS.** If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of the agreement and may not be amended or modified by oral agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable. This Loan Agreement is governed by the bylaws of this Credit Union and the laws of California, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan Agreement and to confirm your lien status on any Property. Time is of the essence.



*(page 4 of 5)*

Experi© 1981, 1994, 2000 Bankers Systems, Inc., St. Cloud, MN Form CL-CU-CA 3/15/2001

**THIRD PARTY AGREEMENT**

For the purposes of the provisions within this enclosure, "I," "me" or "my" means the person signing below and "you" means the Lender identified on page 1.

I agree to give you a security interest in the Property that is described in the security agreement. I agree to the terms of this note and security agreement but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this note or security agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

**I HAVE RECEIVED A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT.**

✎X _____    ✎X _____

(Optional)

Signed _____ For Lender
Title **MANAGER** _____

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable

## 7. SIGNATURES

**SIGNATURES.** By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date.

✎X *Richard W. Miller*    2/25/08        ✎X _____
**RICHARD W. MILLER**

✎X _____    ✎X _____

✎X _____    ✎X _____

# CREDIT APPLICATION

**IMPORTANT APPLICANT INFORMATION:** Federal law requires financial institutions to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

## TYPE OF CREDIT REQUESTED
IMPORTANT: Check (✓) the appropriate boxes below and complete the applicable sections.
Married Applicants May Apply For Separate Accounts

- [X] SECURED
- [ ] UNSECURED
- [X] INDIVIDUAL CREDIT - relying solely on my earnings or property
- [ ] INDIVIDUAL CREDIT - relying on my earnings or property as well as that of others
- [ ] JOINT CREDIT - We intend to apply for joint credit. (initials) _____

### FOR CREDITOR USE
DATE 02-20-2008    CLASS NO. _____
ACCOUNT NO. _____
APPROVED [ ] BY _____
DECLINED [ ] BY _____

| AMOUNT REQUESTED | FOR HOW LONG | PAYMENT DATE DESIRED | WANT TO REPAY | PROCEEDS OF LOAN TO BE USED FOR: |
|---|---|---|---|---|
| $18,911.79 | 60.00 months | | [ ] MONTHLY  [X] EVERY OTHER WEEK | |

## SECTION A - INDIVIDUAL APPLICANT INFORMATION

**NAME (Last, First, Middle)**
MILLER, RICHARD W.

| BIRTH DATE | TELEPHONE NO. | DRIVER'S LICENSE NO. | SOCIAL SECURITY NO. | NO. DEPENDENTS | AGES OF DEPENDENTS |
|---|---|---|---|---|---|
| | | | | 0 | |

**ADDRESS (Street, City, State & Zip)**
5808 HANNAH BROOK ST, NORTH LAS VEGAS, NV 89081

COUNTY _____ Do you [X] own or [ ] rent? HOW LONG _____

**PREVIOUS ADDRESS** (Street, City, State & Zip) (Complete if less than 3 years at present address)
COUNTY _____ Did you [ ] own or [ ] rent? HOW LONG _____

**EMPLOYER (Company Name & Address)** HOW LONG 0.00 yrs
FIRST AMERICAN TITLE INSURANCE

| BUSINESS PHONE | Ext. | POSITION OR TITLE | | SALARY PER MONTH |
|---|---|---|---|---|
| | | MANAGER EXAMINER | GROSS: $ | NET: $ |

**PREVIOUS EMPLOYER (Company Name & Address)** HOW LONG _____

**NAME & ADDRESS OF NEAREST RELATIVE NOT LIVING WITH YOU**    RELATIONSHIP    TELEPHONE NO. (Include Area Code)

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

Alimony, child support, separate maintenance received under: [ ] Court Order  [ ] Written Agreement  [ ] Oral Understanding

**SOURCES OF OTHER INCOME**    AMOUNT PER MONTH $

Is any income listed in this Section likely to be reduced before the credit request is paid off?
[X] No  [ ] Yes (Explain)

Have you previously received credit from us?
[X] No  [ ] Yes - When? _____

## SECTION B - JOINT APPLICANT OR OTHER PARTY INFORMATION
Complete if: joint credit, or the individual applicant is relying on the income of others as a basis for repayment, or the individual applicant lives in a community property state or is relying on property located in a community property state as a basis for repayment of the credit requested.

**NAME (Last, First, Middle)**

| BIRTH DATE | TELEPHONE NO. | DRIVER'S LICENSE NO. | SOCIAL SECURITY NO. | NO. DEPENDENTS | AGES OF DEPENDENTS |
|---|---|---|---|---|---|
| | | | | 0 | |

| RELATIONSHIP TO APPLICANT (If Any) | PRESENT ADDRESS (Street, City, State & Zip) | HOW LONG |
|---|---|---|

**EMPLOYER (Company Name & Address)** HOW LONG _____

| BUSINESS PHONE | Ext. | POSITION OR TITLE | | SALARY PER MONTH |
|---|---|---|---|---|
| | | | GROSS: $ | NET: $ |

**PREVIOUS EMPLOYER (Company Name & Address)** HOW LONG _____

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

Alimony, child support, separate maintenance received under: [ ] Court Order  [ ] Written Agreement  [ ] Oral Understanding

**SOURCES OF OTHER INCOME**    AMOUNT PER MONTH $

Is any income listed in this Section likely to be reduced before the credit requested is paid off?
[ ] No  [ ] Yes (Explain)

Has Joint Applicant or Other Party ever received credit from us?
[ ] No  [ ] Yes - When? _____

## SECTION C - MARITAL STATUS
Complete if: for joint or secured credit, or applicant resides in this state or another community property state, or is relying on property located in such state as a basis for repayment of the credit requested.

| | | | |
|---|---|---|---|
| APPLICANT | [ ] Married (incl. registered domestic partner) | [ ] Separated | [ ] Unmarried (including single, divorced, and widowed) |
| OTHER PARTY | [ ] Married (incl. registered domestic partner) | [ ] Separated | [ ] Unmarried (including single, divorced, and widowed) |

© 2006 Wolters Kluwer Financial Services - Bankers Systems™ Form UCA-RDP 4/25/2006    (page 1 of 2)

## SECTION D - ASSET & DEBT INFORMATION

If Section B has been completed, this Section should be completed giving information about both the Applicant and Joint Applicant or Other Person. Please mark Applicant-related information with an "A". If Section B was not completed, only give information about the Applicant in this Section.

**ASSETS OWNED** (Use separate sheet if necessary.)

| DESCRIPTION OF ASSETS | NAME IN WHICH THE ACCOUNT IS CARRIED | SUBJECT TO DEBT? | VALUE |
|---|---|---|---|
| CHECKING ACCOUNT NUMBER(S) (where) | | | $ |
| SAVINGS ACCOUNT NUMBER(S) (where) | | | |
| CERTIFICATE OF DEPOSIT(S) (where) | | | |
| MARKETABLE SECURITIES (issuer, type, no. of shares) | | | |
| REAL ESTATE (location, date acquired) | | | |
| LIFE INSURANCE (issuer, face value) | | | |
| AUTOMOBILES (make, model, year) | | | |
| OTHER (list) | | | |
| TOTAL ASSETS | | | $ 0.00 |

**OUTSTANDING DEBTS** (Include charge accounts, installment contracts, credit cards, rent, mortgages and other obligations. Use separate sheet if necessary.)

| CREDITOR | ACCOUNT NUMBER | NAME IN WHICH THE ACCOUNT IS CARRIED | ORIGINAL AMOUNT (OMIT RENT) | PRESENT BALANCE (OMIT RENT) | MONTHLY PAYMENTS |
|---|---|---|---|---|---|
| LANDLORD OR MORTGAGE HOLDER A | ☐ Rent Payment ☐ Mortgage | RICHARD W. MILLER | $ 0.00 | $ 239,237.00 | $ 1,768.00 |
| AUTOMOBILES (describe) A | | RICHARD W. MILLER | 0.00 | 0.00 | 0.00 |
| A | | RICHARD W. MILLER | 0.00 | 100,625.00 | 783.00 |
| A | | RICHARD W. MILLER | 0.00 | 8,390.00 | 83.00 |
| A | | RICHARD W. MILLER | 0.00 | 149,106.00 | 897.00 |
| A | | RICHARD W. MILLER | 0.00 | 0.00 | 0.00 |
| A | | RICHARD W. MILLER | 0.00 | 0.00 | 0.00 |
| A | | RICHARD W. MILLER | 0.00 | 0.00 | 0.00 |
| A | | | | | |
| TOTAL DEBTS | | | $ 0.00 | $ 767,947.00 | $ 6,794.00 |

Complete the following information about both the Applicant and Joint Applicant or Other Person (if applicable):

Are you obligated to make Alimony, Support or Maintenance Payments? ☒ No ☐ Yes _____ Amt. per month $ _____

If yes, to (Name & Address) _____

Are you a co-maker, endorser, or guarantor on any loan or contract? ☒ No ☐ Yes  If yes, for whom? _____ To whom? _____

Are there any unsatisfied judgments against you? ☒ No ☐ Yes  If yes, to whom owed? _____ Amount $ _____

Have you been declared bankrupt in the last 10 years? ☒ No ☐ Yes  If yes, where? _____ Year? _____

**SECTION E - SECURED CREDIT** Complete only if credit is to be secured. Briefly describe the property to be given as security.

PROPERTY DESCRIPTION
2007 TOYOTA PRIUS VIN - JTDKB20U473265451

NAMES & ADDRESSES OF ALL CO-OWNERS OF THE PROPERTY

If the security is real estate, give the full name of your spouse or other person who has community property rights pursuant to state law (if any).

**SIGNATURES:** I certify that everything I have stated in this application and on any attachments is correct. Lender may keep this application whether or not it is approved. By signing below I authorize Lender to check my credit and employment history and to answer questions others may ask Lender about my credit record with Lender. I understand that I must update credit information at Lender's request if my financial condition changes.

_R. C. W. Hill_ _____ 2/25/08 _____ _____ _____
Applicant's Signature        Date        Other Signature (Where Applicable)        Date

© 2006 Wolters Kluwer Financial Services - Bankers Systems™ Form UCA-ROP 4/25/2006

(page 2 of 2)

# NADA Official Used Car Guide
## Thursday, May 24, 2012

## Vehicle Summary NADA Values

| | | | | |
|---|---|---|---|---|
| **Region:** | Desert Southwest - May 2012 | **Reference #:** | | |
| **Vehicle Description:** | 2007 TOYOTA Prius-4 Cyl. Liftback 5D | **VIN:** | JTDKB20U473265451 | |
| **MSRP:** | $22,175 | **Weight:** | 2,932 | |
| **Mileage:** | 72,500 | | | |

| | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Loan | Clean Retail |
|---|---|---|---|---|---|
| **Base Value** | $10,650 | $11,775 | $12,675 | $11,425 | $15,400 |
| **Optional Equipment** | | | | | |
| **Option Total** | $0 | $0 | $0 | $0 | $0 |
| **Mileage Adjustment** | $0 | $0 | $0 | $0 | $0 |
| **Total NADA Official Used Car Guide Values** | $10,650 | $11,775 | $12,675 | ($11,425) | $15,400 |

NADA assumes no responsibility or liability for any errors or omissions
or any revisions or additions made by anyone on this report.
All NADA values are reprinted with permission of
NADA Used Car Guide, NADASC.

EXHIBIT 2

RECEIVED & FILED

JUN 8  9 03 AM '12

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

RICK A. YARNALL
CHAPTER 13 BANKRUPTCY TRUSTEE
701 BRIDGER AVENUE SUITE 820
LAS VEGAS, NEVADA 89101
(702) 853-4500

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| IN RE: | ) | BK-S-10-15191-MKN |
| | ) | |
| MILLER, RICHARD W. | ) | Chapter 13 |
| MILLER, LOLITA S. | ) | |
| | ) | NOTICE OF UNCLAIMED FUNDS |
| | ) | |

TO: Clerk, United States Bankruptcy Court

From: Rick A. Yarnall, Chapter 13 Bankruptcy Trustee

Pursuant to Rules 3010 and 3011, of the Bankruptcy Rules, the following unclaimed funds are being forwarded to you to be deposited in the registry of the United States Bankruptcy Court. These funds can be withdrawn as provided in Chapter 129, Title 28 2042.

| Claim# | Claimant & Address | CAS 106000 | CAS613300 |
|---|---|---|---|
| 09 | INTOUCH CREDIT UNION<br>5640 DEMOCRACY DR<br>PLANO TX 75024 | | $4280.28 |
| | Totals | | $4280.28 |

Date: 6 8 2012

RICK A. YARNALL, TRUSTEE

Rick A. Yarnall
Chapter 13 Bankruptcy Trustee

NOTE: Claims that are $25.00 or less go into CAS 106000. Claims that are more than $25.00 go into CAS 613300. The amounts that are to be deposited into the registry can be written on one check.

Reason: Secured creditor never filed Proof of Claim.

7082422 - $4,280.28